AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br><br>Jose Antonio GUTIERREZ<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 3:16 MJ 5293<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 5, 2016__ in the county of __Wood__ in the __Northern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841, 846 | Possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance |

This criminal complaint is based on these facts:
See attached affidavit.

☐ Continued on the attached sheet.

*Complainant's signature*

John Clayton, Special Agent (DEA)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12-8-2016

City and state: Toledo OH

MAG. JUDGE JAMES R. KNEPP II
*Printed name and title*



# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF OHIO – WESTERN DIVISION

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, John Clayton, hereinafter referred to as your affiant, currently assigned to the Cleveland District Office of the Drug Enforcement Administration (DEA), being duly sworn, I do state the following:

## INTRODUCTION

1. As a Special Agent of the DEA, your Affiant is an investigative law enforcement officer of the United States of America within the meaning of Title 18 U.S.C. § 2510(7). Your Affiant is empowered to conduct investigations and to make arrests for federal felony offenses.

2. Your Affiant has been employed by the Drug Enforcement Administration since 1991. During that time, your Affiant has been assigned to investigate activities of drug trafficking organizations, drug-related gang and violent crime activities, and other criminal offenses. As a Special Agent of the DEA, your Affiant has participated in narcotics/drug enforcement, and the dismantlement of mid to upper-level drug trafficking organizations. Your Affiant has planned and executed long-term investigative operations which have led to the disruption and dismantlement of independent drug traffickers, organized criminal street gangs, national drug distribution networks, whose revenues centered primarily around the trafficking and distribution of illicit drugs. Those investigative operations have included surveillance, undercover drug purchases, Title III intercepts of telephone communications and activities.

3. As a Special Agent in the DEA, your Affiant received basic drug training at the DEA Academy in Quantico, Virginia. Your Affiant has received field training and accrued practical experience in advanced drug-related investigative techniques, which include, but are not limited to, surveillance, undercover operations, interview and interrogation techniques, informant recruitment and control, search warrant and case preparation, and interception and analysis of recorded conversations. Your Affiant has been involved in multiple controlled undercover purchases of drug evidence and subsequent arrests of defendants charged with drug-related crimes. Your Affiant has supervised the activities of informants who have provided information concerning controlled substances and organized criminal activities, purchased controlled substances, and supervised consensual monitoring in connection with these investigations. Your Affiant has utilized various forms of tracking technology to assist in various forms of criminal investigation.

1

## BASIS OF INFORMATION

4. Except as otherwise noted, the information set forth in this affidavit has been provided to your Affiant, by DEA Agents, DEA task force officers, or other law enforcement officers. Unless otherwise noted, whenever in this Affidavit your Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom Affiant has spoken or whose report Affiant has read and reviewed. Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth Affiant's observations but rather has been provided directly or indirectly by DEA Agents, Task Force Officers, or other law enforcement officers who conducted such surveillance. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data System (LEADS), the State of Ohio or the National Crime Information Center (NCIC), the Ohio Law Enforcement Gateway (OHLEG) computer system, and other known public database computer systems, by members herein described.

5. Since this Affidavit is being submitted for the limited purpose of securing arrest warrants, your Affiant has not included each and every fact known to him concerning this investigation. Your Affiant has set forth only the facts that he believes are necessary to establish the foundation for the issuance of the arrest warrants.

6. On December 5, 2016, the Drug Enforcement Administration (DEA) received information from a confidential and reliable source, who has provided credible and reliable information in the past, that A.P., was expecting a shipment of cocaine and/or heroin to be delivered to the Cleveland or Toledo, Ohio area on or around December 5, 2016.

7. On December 5, 2016, Your Affiant spoke with the Confidential Source and was informed that Martin Carlos CONTRERAS would be directing A.P. to a location in Toledo, Ohio to pick up twenty kilograms of cocaine.

8. On December 5, 2016, Your Affiant met with the DEA CS and discussed the meeting between A.P. and CONTRERAS. Your Affiant was informed that a third unidentified individual in Texas was directing CONTRERAS. The CS attempted to direct the delivery of cocaine to CONTRERAS. It was determined that the tractor-trailer would be delivered in the Toledo area.

9. On December 5, 2016, the CS was provided with the address of 26416 Baker Drive, Perrysburg, Ohio as the location to meet the tractor trailer containing the cocaine. On December 5, 2016, A.P. informed CONTRERAS that a second vehicle would follow A.P. and CONTRERAS to the truck stop. The second vehicle would transport the cocaine to a secondary location because A.P. would not travel with cocaine in his vehicle. Knowing that a second vehicle would be utilized Your Affiant

inserted an undercover in that position and had the undercover officer drive the minivan following A.P. and CONTRERAS.

10. On December 5, 2016, Your Affiant observed A.P. pick up CONTRERAS in Cleveland, Ohio and travel to 26416 Baker Drive, Perrysburg, Ohio. A.P. and CONTRERAS were followed by a DEA task force officer driving a minivan for the purpose of transporting the cocaine.

11. On December 5, 2016 at approximately 6:00 p.m., The DEA established surveillance at various truck stops in the area of Interstate 280 and Interstate 80/90 in Perrysburg, Ohio, to include the Petro Truck station located at 26416 Baker Drive, Perrysburg, Ohio.

12. On December 5, 2016, at approximately 6:00 p.m., multiple tractor trailers were located at the Petro Truck stop. All the tractor trailers were parked in the rear parking area. No passenger vehicles were observed in the rear parking area of the Petro Truck stop.

13. At approximately 7:15 p.m. Members of the DEA observed a Hyundai Genesis, believed to be driven by A.P., followed by a Dodge Grand Caravan pull into the parking area of the Iron Skillet, restaurant located in front The Petro Truck stop. The vehicles were observed parking, but no one exited either vehicle. At approximately 7:26 p.m., surveillance units observed the Hyundai start and drive in a slow circle around the front parking lot of the Iron Skillet. The Hyundai parked a second time and no one exited the vehicle.

14. At approximately 7:31 p.m., surveillance units observed the Hyundai start to move in the parking lot a second time. The Hyundai was then observed driving to the exit of the Iron Skillet and stopping and waiting. Note: Your Affiant could observe CONTRERAS on the cell phone in the parking lot. The Dodge Grand Caravan was then observed starting his vehicle and pulling behind the Hyundai as they both exited the parking lot following a tractor trailer.

15. Your affiant observed the tractor trailer with the marking Team TNI on the side of the vehicle travelling along the back road (Baker Drive) to the rear entrance of the Petro Truck stop. Note: there were no passenger vehicles in the tractor trailer parking area.

16. Your Affiant observed the Team TNI tractor trailer, followed by the Hyundai and the Grand Caravan proceed down Baker Drive and turn left onto Hanley Road past the Petro Truck stop area of operation. Hanley Road appeared to be a dead end road with a closed Budget Inn at the end of the road. There were no street lights and no other vehicles were observed in the area. All three vehicles stopped in the middle of the roadway.

17. Your Affiant observed the passenger of the Hyundai, later identified as Martin Carlos CONTRERAS, exit the vehicle and walk up to the passenger side Team TNI tractor trailer empty handed. Your Affiant observed CONTRERAS motion to the Grand Caravan to follow CONTRERAS to the Team TNI tractor Trailer. The Grand Caravan followed CONTRERAS as he walked to the tractor trailer.

18. Your Affiant observed the Grand Caravan stop and wait as CONTRERAS walked up to the passenger door of the cab of the tractor trailer. CONTRERAS returned with a large heavy black duffel bag (as evidenced by the way CONTRERAS was carrying the bag). Your Affiant observed CONTRERAS and the driver of the Grand Caravan place the black duffel bag in the back of the Grand Caravan. Your Affiant was informed that before the bag was placed the Grand Caravan, the DEA task force officer asked CONTRERAS what was inside the bag. CONTRERAS responded that the bag contained 15 kilograms of cocaine. The DEA task force officer responded that it was supposed to be twenty kilograms. CONTRERAS then opened the bag to show the DEA task force officer the 15 kilograms of cocaine. CONTRERAS than assisted the DEA task force officer with placing the bag inside the Grand Caravan.

19. Your Affiant then called for the other members of law enforcement to respond and stop both vehicles. One black duffel bag was located in the back of the Grand Caravan as observed by your Affiant. The black duffel bag contained fifteen (15) kilograms of cocaine. S/A Joe Harper field tested the substance and the substance positive for the presence of cocaine.

20. José Antonio GUTIERREZ was the driver of the Team TNI Tractor trailer and Cesar Javier GUTIERREZ was the passenger of the Team TNI tractor trailer.

21. The occupant of the Hyundai was not in the immediate vicinity of the two vehicles and upon seeing the police arrive departed the area. No pursuit was initiated at that time based on the fact that your Affiant believes that the driver of the Hyundai was A.P.

22. All the individuals were detained and read their Constitutional rights per Miranda. Everyone invoked their right to remain silent except Cesar Javier GUTIERREZ. Cesar Javier GUTIERREZ was read his rights twice and signed a rights waiver form. Cesar Javier GUTIERREZ indicated that his brother José was on the phone with an unidentified individual and could be heard asking where to stop. Caser Javier GUTIERREZ overheard José saying to hurry up and he wanted to get rid of the bag. Cesar Javier GUTIERREZ handed the bag to Martin Carlos CONTRERAS at José's direction.

3 16 MJ 5293

## CRIMINAL HISTORY

23. José Antonio GUTIERREZ has no criminal history. Cesar Javier GUTIERREZ has no criminal history. Martin Carlos CONTRERAS has an arrest for possession of 2,000 pounds of marijuana in Laredo, Texas in February of 2000.

## SUMMARY AND CONCLUSION

24. Based on your Affiant's training, experience and the facts set forth in this Affidavit, your Affiant believes that there is probable cause to believe that Martin Carlos CONTRERAS, José Antonio GUTIERREZ and Cesar Javier GUTIERREZ did knowingly and intentionally conspire to possess with the intent to distribute cocaine, a schedule II controlled substance, in violation of Title 21, U.S.C., Section 841(a)(1) & (b)(1)(A), and of Title 21, U.S.C., Section 846.

John Clayton, Special Agent,
Drug Enforcement Administration

Sworn to and subscribed before me this ___ day of December, 2016.

James R Knepp, II
UNITED STATES MAGISTRATE JUDGE

5